IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.   09-cv-00295-WYD-MJW

GLENN H.  KEMP,

Plaintiff,

v.

ARISTEDES ZAVARAS,
KEVIN MILYARD,
BEVERLY DOWIS,
BRIAN WEBSTER,
GATBEL CHAMJOCK,
CHRIS WADE,
T. TARVER, and
ANTHONY A. DeCESARO,

Defendants.

---

**RECOMMENDATION ON
DEFENDANTS' MOTION TO DISMISS (Docket No. 18)**

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This case was referred to the undersigned pursuant to an Order of Reference to

Magistrate Judge issued by Chief Judge Wiley Y. Daniel on June 8, 2009 (Docket No.

13).

The pro se incarcerated plaintiff brings this action pursuant to 42 U.S.C. § 1983,

alleging the following in his Amended Prisoner Complaint (Docket No. 10).  On the

morning of February 5, 2008, transport officers defendants Wade and Tarver secured

him for a medical day trip to Denver Health and Medical Center.  The officers applied

security restraints but not seat belt restraints on him.  Road conditions were icy and

snow-packed.  During the trip, Wade, who was the officer driving, rear-ended another

vehicle, caused a chain reaction involving five vehicles which injured plaintiff, and was

cited for following another vehicle too closely.  On February 6 and 17, plaintiff

complained to defendant Webster of lower back and neck pain which have gone

relatively untreated causing "denervation resulting in muscle wasting and loss of muscle

function in various parts of the plaintiff's body."  (Docket No. 10 at 4).  Plaintiff raises

three claims for relief detailed below.

**CLAIM ONE**

In Claim One, plaintiff alleges deliberate indifference and the tort of negligence

by defendants Tarver and Wade, the medical transport officers.  They put security

restraints on plaintiff, namely, handcuffs (which were affixed to a black box and then to

a waist chain) and leg shackles.  He was then placed on a van bench-chair,

unrestrained by seat belts, yet Tarver and Wade seat-belted themselves for the

transport.  Wade drove the van at an unsafe rate of speed on iced-over, snow-packed

roads, causing a five-car collision and serious injury to the plaintiff.

**CLAIM TWO**

In Claim Two, plaintiff alleges deliberate indifference to serious medical needs by

defendants  physician's assistants ("PA") Brian Webster and Gatbel Chamjock, Health

Service Administrator Beverly Dowis, and Colorado Department of Corrections

("CDOC") grievance officer Anthony A. DeCesaro.  More specifically, plaintiff alleges the

following with respect to each of these four defendants.

3

**Defendant Brian Webster**

On February 6, 2008, plaintiff informed Webster he was having severe lower back pain and pain in his leg which resulted in numbness in his lower left leg and foot. Without any kind of examination, Webster diagnosed plaintiff as having "a little muscle soreness from the accident," prescribed Motrin, and omitted some of the symptoms plaintiff reported from plaintiff's medical record.  On February 12, 2008, plaintiff again requested treatment, pain medication, and to be seen by a medical doctor because he was experiencing significant pain in his lower back and legs.  Webster, however, refused to refer plaintiff to a doctor and stated, "[t]here's nothing wrong with your back, and the numbness in your leg is only cutaneous."  No further treatment was given at that time.  Four days later, plaintiff reported to Webster that he had started to experience more severe pain in his neck along with numbness and pain in his right arm and right hand.  Webster, however, refused further testing, treatment, or medication more effective than Tylenol or Motrin.  Despite numerous verbal and written requests to be seen by a physician and for adequate assessment and treatment of his injuries, and despite visual evidence of muscle wasting of plaintiff's upper and lower extremities, Webster repeatedly ignored and/or denied plaintiff's requests for adequate treatment through the period of February 6 to November 13, 2008.

Plaintiff finally underwent EMG testing of his lower back and neck on November 13 and 20, 2008.  The specialists who performed the tests concluded that plaintiff had suffered pinched nerves in his lower back and neck causing denervation which untreated causes pain in those areas as well as pain and irreparable muscle wasting in his affected extremities.  In addition, they concluded that plaintiff's injuries could be

effectively treated, yet plaintiff has been denied any further meaningful treatment, has been denied effective pain reliever, and has been denied access to the doctors and specialists.

In sum, Webster refused to allow him to see a doctor for several months after the accident, improperly diagnosed his condition, refused to prescribe appropriate pain reliever for the pain plaintiff suffered as a result of his injuries, delayed necessary diagnostic testing, and even after such testing was performed, refused to treat plaintiff's injuries according to the test results and specialists' recommendations. In addition, Webster falsified plaintiff's medical record regarding plaintiff's true medical condition in order to mislead others who might consult the record. As a result, plaintiff has suffered irreparable damage to various parts of his body as well as further damage that continues due to lack of proper treatment, causing needless pain and suffering.

### Defendant Gatbel Chamjock

Plaintiff received an appointment with PA Chamjock on March 3, 2008, after plaintiff filed a grievance against Webster for inadequate treatment and refusal to allow plaintiff to visit a doctor. At this visit, plaintiff reported significant and on-going lower back and neck pain, with numbness in his lower left leg and right arm. Plaintiff also requested a pain reliever stronger than 600 mg. of Motrin or Tylenol, as well as diagnostic testing to determine the cause of the plaintiff's painful symptoms. Although an order for an x-ray was issued, the plaintiff's request for treatment was denied. Plaintiff had another appointment with Chamjock in late March 2008 concerning the results of the lower back x-ray, which clearly indicated a spinal injury in the area where the plaintiff had complained of persistent lower back pain. Once again, plaintiff

requested a stronger, more effective pain reliever, testing, and an appointment with a doctor for the persistent pain in his neck, arm, and lower back. Chamjock then prescribed a drug designed to block the pain signal in the plaintiff's brain, absent any additional testing. Plaintiff vehemently protested the administration of such medication and expressed concern that without further testing this drug would subject him to an on-going risk for more serious harm. Chamjock asserted that plaintiff would be required to take the prescribed medication before advancing to a conventional pain medication. Plaintiff's request for further testing and conventional pain medication was denied.

By June 3, 2008, plaintiff was reporting bouts of urinary incontinence when walking for exercise and while lying in bed due to the pressure on his lower back injury. Chamjock refused to treat the incontinence and falsified the medical report to indicate that plaintiff had reported that he was having groin pain. On April 12, 2009, plaintiff reported to Chamjock that he was having severe pain in his lower back, neck, left leg, and right arm, as well as the continued urinary incontinence. Plaintiff was denied treatment and told that he would receive a follow-up appointment with a facility Clinical Service doctor, but as of May 10, 2009, plaintiff still had not been seen.

In sum, Chamjock showed deliberate indifference to the plaintiff's serious medical needs by denying treatment indicated by diagnostic testing, refusing and/or denying treatment for reported injury, and falsifying plaintiff's medical record in order to mislead others as to the plaintiff's true medical condition. Chamjock's actions and failure to act have resulted in irreparable damage to various parts of the plaintiff's body which in the absence of needed treatment is causing needless pain and suffering.

6

**Defendant Beverly Dowis**

Plaintiff wrote a letter of complaint to Dowis regarding inadequate medical treatment and false documentation of his medical record by Webster and asked her to intervene and schedule an appointment to be examined by a qualified doctor because his serious medical needs were not being met.  Dowis did not respond to the plaintiff's letter and did not intervene as requested but allowed Webster to continue in his abusive practices and procedures.  Even after plaintiff filed several grievances, nothing changed.  In addition, Dowis established and/or tolerated policies and/or procedures by which patients are denied immediate access to what health care providers enter into the patient's medical record during and after a medical complaint is reported.

**Defendant Anthony A. DeCesaro**

On April 21, 2008, plaintiff filed a Step III Grievance in which he described his painful symptoms and the denial of adequate medical treatment and as a remedy requested that he be allowed to be examined by a qualified neurologist or specialist in the field and have appropriate testing done to determine the cause of his severe pain. On June 19, 2008, plaintiff received DeCesaro's answer to the Step III Grievance. DeCesaro showed deliberate indifference to the plaintiff's serious medical needs when he failed to investigate plaintiff's claim, did not pass plaintiff's claim to an investigator who had experience in medical matters, and allowed the grievance findings to stand, stating he "could not second-guess the medical, professional opinion of those individuals, regarding [plaintiff's] diagnosis and treatment, as [he] is not a medical professional."  (Docket No. 10 at 14).  Therefore, DeCesaro declined to recommend any

remedy and instead allowed plaintiff's pain and suffering to proceed under the same

circumstances.  Plaintiff's grievance should have been handled by a medical grievance

officer rather than a grievance officer who handles general claims.  DeCesaro's acts

and failure to act delayed the proper assessment and treatment of the plaintiff's injuries,

and such delay resulted in irreparable damage to various parts of the plaintiff's body

and unnecessary pain and suffering.

### CLAIM THREE

In his third claim for relief, plaintiff alleges that defendants Aristedes Zavaras (the

Executive Director of the CDOC) and Kevin Milyard (the Warden of the Sterling

Correctional Facility ["SCF"] where plaintiff is confined) were deliberately indifferent to

the plaintiff's health and safety.

### Defendant Zavaras

Zavaras failed in his oversight as relating to his policy-making and procedure-

enforcing authority for those under his supervision.  More specifically, he has failed to

establish policies and procedures medical transport officers should follow when

transporting medical prisoners to and from the prison facility for outside appointments

that would require the fastening of the prisoners' seat belts to minimize the risk of injury

in the event of a vehicular accident.  He also has failed to establish policies and

procedures which would allow for a medical investigator to investigate a medical

complaint through the grievance process.  In addition, he has failed to provide the

proper oversight and supervision over those who are charged with providing medical

care and treatment to prisoners in the SCF.

8

**Defendant Milyard**

Milyard has shown through his acceptance of the procedures and disposition of administrative grievance results that he approves of the SCF staff's handling of the plaintiff's medical needs and of the medical transport process.  His acts and failure to act in the form of policy and procedural changes show deliberate indifference to the plaintiff's serious medical needs and unconcern for medical transport prisoners' safety when they are being transported in full prison restraints.

**RELIEF**

Plaintiff seeks declaratory, injunctive, and monetary relief, including punitive damages.  (Docket No. 10 at 21-22**).**

**DEFENDANTS' MOTION TO DISMISS**

Now before the court for a report and recommendation is the motion to dismiss brought by all defendants except Brian Webster, who has not yet been served with process.[1]  (Docket No. 18).  Plaintiff filed a response (Docket No. 20), and the moving defendants filed a reply (Docket No. 21).  The court has very carefully considered these motions papers as well as the court's file and applicable Federal Rules of Civil Procedure and case law.  The court now being fully informed, makes the following

---

[1]In a Minute Order entered by this court on October 1, 2009, this court granted defense counsel's motion to withdraw appearance and motion to dismiss on behalf of defendant Brian Webster.  (Docket No. 24).  Webster remains unserved.  As directed by this court, defense counsel has provided Webster's last known address to the court under seal (Docket Nos. 41 and 42).  In addition, plaintiff provided the court with a new physical address for Webster and moved for the court to direct U.S. Marshal service upon Webster at that address (Docket No. 40).  The court has granted plaintiff's motion. (Docket No. 43).  Therefore, this court will not address the arguments raised in the Motion to Dismiss with respect to Claim Two as it applies to defendant Webster.

findings, conclusions, and recommendation.

The moving defendants seek dismissal of the Amended Prisoner Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) on the following grounds: (1) Claim One should be dismissed because plaintiff's allegations do not rise to the level of a constitutional violation and Tarver and Wade are entitled to qualified immunity, (2) Claim Two should be dismissed because plaintiff's allegations do not state a constitutional violation and defendants are entitled to qualified immunity, (3) Claim Three should be dismissed because it fails to state an Eighth Amendment violation and defendants are entitled to qualified immunity, (4) plaintiff's official capacity claims are barred by the Eleventh Amendment, and (5) plaintiff does not state a claim for injunctive or declaratory relief.

Rule 12(b)(1):

empowers a court to dismiss a Complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). As courts of limited jurisdiction, federal courts may only adjudicate cases that the Constitution and Congress have granted them authority to hear. *See* U.S. CONST. art. III, § 2; *Morris v. City of Hobart*, 39 F.3d 1105, 1110 (10th Cir. 1994). Statutes conferring jurisdiction on federal courts are to be strictly construed. *See F & S Constr. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

Motions to dismiss pursuant to Rule 12(b)(1) may take two forms. First, if a party attacks the facial sufficiency of the complaint, the court must accept the allegations of the complaint as true. *See Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995). Second, if a party attacks the factual assertions regarding subject matter jurisdiction through affidavits and other documents, the court may make its own findings of fact. *See id.* at 1003. A court's consideration of evidence outside the

pleadings will not convert the motion to dismiss to a motion for summary judgment under Rule 56.  *See id.*

Cherry Creek Card & Party Shop, Inc. v. Hallmark Marketing Corp., 176 F. Supp.2d 1091, 1094-95 (D. Colo. 2001).

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor.  Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996).  A motion to dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead 'enough facts to state a claim to relief that is plausible on its face.'"  Cutter v. RailAmerica, Inc., 2008 WL 163016, *2 (D. Colo. Jan. 15, 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic Corp., 550 U.S. at 545 (citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level."  Id.  "[A] plaintiff must 'nudge [] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . .  Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this*

plaintiff has a reasonable likelihood of mustering factual support for *these* claims."

Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting

Bell Atlantic Corp., 127 S. Ct. at 1974).

Since the plaintiff is proceeding without counsel, his pleadings have been

construed liberally and held to a less stringent standard than formal documents drafted

by lawyers.  See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v.

Kerner, 404 U.S. 519, 520-21 (1972)).  Therefore, "if the court can reasonably read the

pleadings to state a claim on which the plaintiff could prevail, it should do so despite the

plaintiff's failure to cite proper authority, his confusion of various legal theories, his poor

syntax and sentence construction, or his unfamiliarity with pleading requirements. . . .

At the same time, . . . it is [not] the proper function of the district court to assume the

role of advocate for the pro se litigant."  Id.

**Claim One**

In Claim One, plaintiff alleges that defendants Wade and Tarver were

deliberately indifferent to his safety and were negligent.

The Supreme Court has extended the Eighth Amendment's reach beyond

punishments that are "physically barbarous."  Rhodes v. Chapman, 452 U.S. 337, 345

(1981).  When a punishment is not alleged to be "physically barbarous," there must

have been unnecessary and wanton infliction of pain.  Id. at 346.  The "unnecessary

and wanton" standard includes punishments that are "so totally without penological

justification" as to result in the "gratuitous infliction of suffering."  Gregg v. Georgia, 428

U.S. 153, 183 (1976).  When physical abuse is not alleged, the actions must represent

more than an ordinary lack of due care for the prisoner's interest or safety.  Whitley v.

12

Albers, 475 U.S. 312, 319 (1986) ("To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety."). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause . . . ." Id.

Furthermore, the prisoner much establish "deliberate indifference" to the prisoner's health or safety. Farmer v. Brennan, 511 U.S. 825 (1994). "[A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. "The Eight Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'" Id.

In the Amended Prisoner Complaint, plaintiff complains that Tarver and Wade did not restrain him in the transport vehicle by securing him in a seat belt. In addition, plaintiff claims that Wade "failed to exercise a protective standard of care and adjust his driving to the hazardous road conditions, but sped along as if he were driving in normal weather and road conditions" and "showed reckless disregard for the plaintiff's safety when he violated a traffic law and was cited for following another vehicle too closely, and causing the 5-car collision accident which resulted in serious injury to the plaintiff." (Docket No. 10 at 6-7). The court notes[2] that in the original Prisoner Complaint (Docket

---

[2]When ruling on a 12(b)(6) motion to dismiss, the court may consider matters of which a court may take judicial notice, see Tellabs, Inc. v. Makor Issues & Rights, Ltd.,

13

No. 3), plaintiff averred more facts in Claim One concerning the incident than he stated

in Claim One of the Amended Complaint.  He stated:

> . . .
>
> On this particular morning, 2/5/08, the transport officers left the
> facility unusually early to allow additional travel time due to the hazardous
> weather conditions.  The weather had been inclement for several days,
> and on this particular morning, road conditions were icy with moderate
> snow cover.
>
> As we approached Speer Blvd., on Arapahoe Street, about halfway
> between 14th Street and Speer Blvd., in Denver, C/O Tarver yelled very
> loudly for C/O wade [sic] to "S-T-O-P."  Apparently, C/O Wade did not
> notice that a pick-up truck and a van had stopped in the lane ahead of
> him.  C/O Wade, then, locked the vehicle's brakes, and it slid and
> slammed into the back of the pick-up truck, which initiated a chain reaction
> of collisions involving 5 vehicles causing the plaintiff to be tossed about in
> the rear of the transport vehicle, unable to brace himself or by any means,
> defend against the impact of the collision due to the prisoner security
> restraints.  C/O Wade was cited for following too closely. . . .

(Docket No. 3 at 6).

Defendants assert that the plaintiff's allegations that Tarver and Wade were

deliberately indifferent to him by failing to place him in seatbelts for his trip to

Denver and that Wade was deliberately indifferent for the way he drove the vehicle

do not rise to the level of blame associated with deliberate indifference.  This court

agrees that the plaintiff has not stated a claim that rises to a constitutional level in

Claim One.

As defendants correctly note, in an unreported decision, the Tenth Circuit

found that a correction officer's failure to apply seatbelts did not, of itself, expose

---

551 U.S. 308, 322 (2007), such as the original Complaint filed in this action.  The court
may take judicial notice whether requested or not.  Fed. R. Evid. 201(c).

14

an inmate to risks of constitutional dimension.  Dexter v. Ford Motor Co., 2004 WL

254753, *3 (10th Cir. Feb. 12, 2004).  The court noted that in Colorado, "the law,

other than in the case of statutorily defined minor passengers, only requires the

driver and front seat passengers to be seatbelted" and that the driver is not

required to seatbelt rear-compartment passengers over the age of eighteen.  Id. at

*4.  In addition, the court noted that "although the law . . . requires a driver to

assure toddlers are secured in child-restraint seats, no comparable statutes require

a driver to seatbelt inmates in transit . . . otherwise incapable of seatbelting

themselves.  The absence of state statutes enacted for the protection of

passengers helpless to seatbelt themselves, other than in the case of toddlers,

speaks mightily to the contemporary standard of decency they might otherwise

announce.  Moreover, there is no federal statute mandating that the occupants of a

motor vehicle, other than federal employees, be seatbelted."  Id.

Furthermore, with regard to the claim against defendant Wade with respect to his

driving, this court finds that plaintiff has plead at most a case of negligence, which does

not state an Eighth Amendment claim.  "Although a § 1983 claim has been described

as a species of tort liability, . . . it is perfectly clear that not every injury in which a

state official has played some part is actionable under that statute. . . .  To hold

otherwise would render § 1983 and the Fourteenth Amendment to the United

States Constitution a font of tort law to be superimposed upon whatever systems

may already be administered by the States."  Norton v. Liddel, 620 F.2d 1375,

1378 (10th Cir. 1980) (quotations and citations omitted).  Plaintiff has not plead

more than an ordinary lack of due care for his interest or safety and thus has not stated

a claim of constitutional dimension.

It is thus recommended that the plaintiff's Eighth Amendment claims in Claim

One be dismissed.  If that recommendation is accepted, then it is further recommended

that the court decline to exercise supplemental jurisdiction over the plaintiff's state law

negligence claim.  "Where a district court has dismissed all claims over which it has

original jurisdiction, 28 U.S.C. § 1367(c)(3) expressly authorizes the court to decline to

exercise supplemental jurisdiction over the remaining state-law claims."  Sauer v.

McGraw-Hill Cos., 2001 WL 1250099, *18 (D. Colo. June 12, 2001).  "Whether to

exercise supplemental jurisdiction under such circumstances lies within the discretion of

the court."  Id. (citation omitted).  The court should exercise such discretion only "in

those cases in which, given the nature and extent of pretrial proceedings, judicial

economy, convenience, and fairness would be served by retaining jurisdiction."  Id.

Generally, "the balance of factors to be considered will point towards declining to

exercise jurisdiction over state-law claims when the federal claims have been eliminated

prior to trial."  Id. (citation omitted).  Furthermore, "[n]otions of comity and federalism

demand that a state court try its own lawsuits, absent compelling reasons to the

contrary."  Id. (quotations omitted).

In this case, there are no compelling reasons to exercise supplemental

jurisdiction over the plaintiff's negligence claim if the § 1983 claims in Claim One are

dismissed.  None of the other claims contained in the Amended Prisoner Complaint are

against either of these two defendants.  In fact, if today's recommendation is accepted

in its entirety, there would be only one federal claim against one other defendant (Brian

Webster) remaining.  See Timeline, Inc. v. Proclarity Corp., 2007 WL 1574069, *9 (W.D.

Wash. May 29, 2007) (and cases cited therein) ("In some cases, courts have declined to exercise supplemental jurisdiction under Section 1367(c)(3) over state-law claims against a defendant after all federal claims against that defendant have been dismissed, even though federal claims remained against other defendants."). Dismissal of this state law claim would be appropriate even with the remaining federal claim against another defendant because the plaintiff's negligence claim concerning the car accident is not so related to the remaining federal claim against Webster that the two claims form part of the same case or controversy. Furthermore, this case is still in its early stages, and in fact, discovery has not yet been conducted. Therefore, it is recommended that the negligence claim in Claim One be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c).

### Claim Two

Defendant Chamjock. Defendants seek dismissal of the plaintiff's claim against defendant Chamjock in Claim Two. Defendants assert that plaintiff's allegations do not show deliberate indifference but instead, at worst, demonstrate a disagreement over treatment, but such a disagreement does not rise to the level of a constitutional violation. In addition, defendants note that plaintiff alleges that Chamjock falsified medical records and that the basis of his claim is that Chamjock allegedly noted that plaintiff had "groin pain" in his medical record instead of "incontinence." Defendants assert that such allegations do not rise above ordinary negligence and are thereby insufficient to state a claim for an Eighth Amendment violation. This court agrees with defendants' assertions.

Plaintiff alleges in this claim that Chamjock showed deliberate indifference to the

plaintiff's serious medical needs by denying treatment indicated by diagnostic testing,

refusing and/or denying treatment fo reported injury, and falsifying plaintiff's medical

record in order to mislead others as to the plaintiff's true medical condition.  Plaintiff

asserts that on March 3, 2008, plaintiff reported significant and on-going lower back and

neck pain, with numbness in his lower left leg and right arm, and requested a pain

reliever strong than 600 mg. of Motrin or Tylenol, as well as diagnostic testing to

determine the cause of the plaintiff's painful symptoms.  Although an order for an x-ray

was issued, the plaintiff's request for treatment was denied.  Plaintiff also asserts that

he had another appointment with Chamjock in late March 2008 concerning the results of

the lower back x-ray, which clearly indicated a spinal injury in the area where the

plaintiff had complained of persistent lower back pain.  Once again, plaintiff requested a

stronger, more effective pain reliever, testing, and an appointment with a doctor for the

persistent pain in his neck, arm, and lower back.  Chamjock then prescribed a drug

designed to block the pain signal in the plaintiff's brain, absent any additional testing.

Plaintiff vehemently protested the administration of such medication and expressed

concern that without further testing this drug would subject him to an on-going risk for

more serious harm.  Chamjock asserted that plaintiff would be required to take the

prescribed medication before advancing to a conventional pain medication.  Plaintiff's

request for further testing and conventional pain medication was denied.  By June 3,

2008, plaintiff was reporting bouts of urinary incontinence when walking for exercise and

while lying in bed due to the pressure on his lower back injury.  Chamjock refused to

treat the incontinence and falsified the medical report to indicate that plaintiff had

reported that he was having groin pain.  On April 12, 2009, plaintiff reported to

18

Chamjock that he was having severe pain in his lower back, neck, left leg, and right arm, as well as the continued urinary incontinence.  Plaintiff was denied treatment and told that he would receive a follow-up appointment with a facility Clinical Service doctor, but as of May 10, 2009, plaintiff still had not been seen.

 "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."  Estelle v. Gamble, 429 U.S. 97, 106 (1976).  A complaint that a defendant "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."  Id. at 105-06.  "Rather, 'a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.'"  Self v. Crum, 439 F.3d 1227, 1230 (10th Cir.) (quoting Estelle, 429 U.S. at 106), cert. denied, 549 U.S. 856 (2006).  "A prison official's deliberate indifference to an inmate's serious medical needs is a violation of the Eighth Amendment's prohibition against cruel and unusual punishment. . . .  The test for constitutional liability of prison officials 'involves both an objective and a subjective component.'"  Mata v. Saiz, 427 F.3d 745, 751 (10th Cir. 2005).  As the Tenth Circuit has explained:

> to properly set forth an Eighth Amendment claim on which relief may be granted, [the prisoner] must set forth facts demonstrating [1] that his alleged medical need . . . was sufficiently serious to meet the objective element of the deliberate indifference test, and [2] that the Defendants' delay in meeting that need caused him substantial harm.  Finally, to meet the subjective element of the deliberate indifference test, [the prisoner] must allege facts supporting an inference [3] that Defendants knew about and disregarded a substantial risk of harm to his health or safety.

Oxendine v. Kaplan, 241 F.3d 1272, 1276-77 (10th Cir. 2001) (quotations omitted).

Reading plaintiff's pleadings liberally, accepting all factual allegations in the

pleading as true, and resolving all reasonable inferences in the plaintiff's favor, this court finds that plaintiff has not stated an Eighth Amendment claim against Chamjock in Claim One.  Plaintiff's own averments in his Amended Prisoner Complaint and in his original Prisoner Complaint show that he was seen many times in the medical department by both defendant Webster and defendant Chamjock, that they examined the plaintiff, that Chamjock ordered an x-ray of plaintiff's back, that different medications were prescribed for his pain, and that Webster prescribed a drug for the plaintiff's incontinence.  Plaintiff, however, complains that the examinations and pain medications were inadequate, that he did not want to take another medication subsequently prescribed, that he should have been seen by specialists sooner, that other diagnostic tests should have been done sooner, and that the medication for his incontinence did not help the situation and had some side effects.  Such claims do not state a constitutional violation.

Chamjock's refusal to provide a particular course of treatment preferred by the plaintiff does not constitute deliberate indifference.  See Perkins v. Kansas Dep't of Corr., 165 F.3d 803, 811 (10th Cir. 1999) ("a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation").  A medical difference of opinion is not actionable under the Eighth Amendment.  Fitzgerald v. Corrections Corp. of Am., 403 F.3d 1134, 1142 (10th Cir. 2005).  In addition, a prisoner's belief that he needed additional medication, other than that prescribed, as well as his contention that he was denied treatment by a specialist is insufficient to establish a constitutional violation.  Ledoux v. Davies, 961 F.2d 1536, 1537 (10th Cir. 1992).  Furthermore, plaintiff's refusal to take prescribed medication also

does not constitute an Eighth Amendment violation by the defendant.  See Carter v.

Troutt, 175 Fed. Appx. 950 (10th Cir. Apr. 7, 2006) (No Eighth Amendment violation by

prison doctor who refused to prescribe a certain pain medication where he prescribed

other medications for the prisoner, prisoner missed his follow-up appointment for

treatment, and he refused to be examined unless he was prescribed the pain

medication he wanted.  Doctor monitored prisoner and his health situation and provided

ongoing-care, albeit not the care the prisoner desired); Mosley v. Snider, 10 Fed. Appx.

663 (10th Cir. Mar. 22, 2001) (Inmate did not state an Eighth Amendment claim based

upon his allegations that his prescription was discontinued because facility physician

determined it was no longer needed, a different medication was prescribed but the

inmate refused to accept it, and the inmate then missed his next three medical

appointments.); Ledoux v. Davies, 961 F.2d 1536 (10th Cir. 1992) (No merit to

arguments concerning defendants' alleged deliberate indifference to medical needs

because plaintiff's belief that he needed additional medication, other than that

prescribed by the treating physician, as well as his contention that he was denied

treatment by a specialist is insufficient to establish a constitutional violation.).  See also

Self v. Crum, 439 F.3d at 1232 ("[T]he subjective component is not satisfied, absent an

extraordinary degree of neglect, where a doctor merely exercises his considered

medical judgment.  Matters that traditionally fall within the scope of medical judgment

are such decisions as to whether to consult a specialist or undertake additional medical

testing.").  In sum, this court finds that the plaintiff has not stated an Eighth Amendment

claim of deliberate indifference against defendant Chamjock.

Anthony DeCesaro.  Defendants next assert that the plaintiff's claims

against grievance officer Anthony DeCesaro do not state a claim for deliberate

indifference and thus do not state an Eighth Amendment violation.  This court

agrees.  See Thomas v. Ortiz, 2007 WL 3256708, *3 & 4 (D. Colo. Nov. 1, 2007)

(inmate failed to state a claim of deliberate indifference against grievance officer

DeCesarro).  Plaintiff's physical complaints were not the type of "unusual case" in

which it would be obvious to a layperson such as DeCesaro that inadequate

medical care was being provided.  Id. at *3 (citing, e.g., Bond v. Aguinaldo, 228 F.

Supp.2d 918, 920-21 (N.D. Ill. 2002) ("Because deliberate indifference requires

actual knowledge of a serious risk of harm, [Plaintiff] may not sue nonmedical

personnel who denied his grievances.  Except in the unusual case where it would

be evident to a layperson that a prisoner is receiving inadequate or inappropriate

treatment, prison officials may reasonably rely on the judgment of medical

professionals).  In addition, "because the state prison grievance procedure does

not create any constitutional rights, DeCesaro cannot be held liable under a

constitutional deliberate indifference theory for being a decision-maker in the

grievance process."  Id. at *4.  "Finally, . . . a step 3 grievance officer cannot be

held liable in a Section 1983 case, because Plaintiff cannot allege that DeCesaro

in any way directly caused or participated in the failure to provide constitutionally

required medical care."  Id.  As discussed in more detail in the discussion of Claim

Three below, "[t]he courts require direct, personal participation in the alleged

constitutional violations, and DeCesaro's only alleged involvement here were

actions he took as the step 3 grievance officer. . .  In the Tenth Circuit,

constitutional allegations against an actor whose only involvement was during the

grievance process do not state a claim." <u>Id.</u> Therefore, this court recommends that plaintiff's claim in Claim Two against DeCesaro be dismissed.

<u>Defendant Dowis, Health Service Administrator.</u> According to the plaintiff, he wrote a letter of complaint to Dowis regarding inadequate medical treatment and false documentation of his medical record by Webster and asked her to intervene and schedule an appointment to be examined by a qualified doctor because his serious medical needs were not being met. Dowis did not respond to plaintiff's letter and did not intervene as requested but allowed Webster to continue in his abusive practices and procedures. Even after plaintiff filed several grievances, nothing changed. In addition, Dowis established and/or tolerated policies and/or procedures by which patients are denied immediate access to what health care providers enter into the patient's medical record during and after a medical complaint is reported.

Defendants assert that the plaintiff's allegation that Dowis is deliberately indifferent is conclusory and lacks any non-conclusory allegations relating to the requisite state of mind for pleading and Eighth Amendment violation. They further assert that moreover, the allegations sound in negligence, not deliberate indifference. In addition, with regard to plaintiff's allegations regarding establishing or tolerating policies or procedures for denying inmates "immediate access" to what healthcare providers enter into their medical records, defendants assert that plaintiff's allegations reflect that he had access to his medical records, and the fact that the access was not "immediate," even if true, does not state an Eighth Amendment violation for two reasons. First, plaintiff does not assert that the lack of immediate access to his medical records placed him at substantial risk of serious harm. Second, the allegations do not

demonstrate the requisite culpable state of mind for an Eighth Amendment violation.

This court recommends dismissal of plaintiff's deliberate indifference claim against Dowis, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii),[3] on a different basis, namely, lack of personal involvement, which is discussed more thoroughly below with regard to Claim Three against supervisory defendants Zavaras and Milyard.  As noted below, allegations that a person was sent a grievance and/or correspondence is not sufficient to establish his or her personal participation in a constitutional violation.  See Walker v. Meyer, 2009 WL 961490, *4 (D. Colo. Apr. 7, 2009).  In addition, this court finds that not permitting plaintiff to have immediate access to his medical records does not state a claim of constitutional magnitude.  See Cannon v. Mason, 2009 WL 588581 (E.D. Okla. Mar. 6, 2009) ("While inmates have a constitutional right of access to medical care . . . plaintiff has failed to present authority for an Eighth Amendment right to review his medical records.  The court finds this claim is meritless.").

### Claim Three

Defendants next assert that the plaintiff has not alleged that defendants Zavaras (the Executive Director of the CDOC) and Milyard (the Warden of SCF) personally participated in the alleged constitutional deprivation and that instead his claims are brought against them strictly in their supervisory capacities.  Defendants note that the plaintiff has not alleged that these two defendants were aware of any deficiencies in policy or training prior to the incidents giving rise to the plaintiff's

---

[3] Subsection (e)(2)(B)(ii) of § 1915 provides in pertinent part that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted . . . ."  28 U.S.C. § 1915(e)(2)(B)(ii).

claims and that at worst, plaintiff's allegations amount to negligence claims which are insufficient to state an Eighth Amendment violation.

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." Foote v. Spiegel, 118 F.3d 1416, 1423 (10th Cir. 1997). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1948 (2009).  As the Tenth Circuit has stated:

> Under § 1983, government officials are not vicariously liable for the misconduct of their subordinates.  "[T]here is no concept of strict supervisor liability under § 1983." . . .  "This does not mean that a supervisor may not be liable for injuries caused by the conduct of one of his subordinates.  It does mean that his liability is not vicarious, that is, without fault on his part." . . . .
>
> Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights.  To establish supervisor liability under § 1983, "it is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually committed the violation.  Instead, . . . the plaintiff must establish 'a deliberate, intentional act by the supervisor to violate constitutional rights.'" . . .  In short, the supervisor must be personally "involved in the constitutional violation," and a "sufficient causal connection" must exist between the supervisor and the constitutional violation." . . . .
>
> In order to establish a § 1983 claim against a supervisor for the unconstitutional acts of his subordinates, a plaintiff must first show the supervisor's subordinates violated the constitution.  Then, a plaintiff must show an "affirmative link" between the supervisor and the violation, namely the active participation or acquiescence of the supervisor in the constitutional violation by the subordinates. . . .  In this context, the supervisor's state of mind is a critical bridge between the conduct of a subordinate and his own behavior.  Because "mere negligence" is not enough to hold a supervisor liable under § 1983, a plaintiff must establish that the supervisor acted knowingly or with "deliberate indifference" that a constitutional violation would occur. . . .

Serna v. Colorado Dep't of Corrections, 455 F.3d 1146, 1151-52 (10th Cir. 2006) (citations omitted).

Reading the Amended Prisoner Complaint in the light most favorable to the plaintiff, this court finds that the plaintiff has not alleged the requisite affirmative link between Executive Director Zavaras's and Warden Milyard's conduct and the alleged constitutional violations.  Allegations that they are the "Head Administrator" and were sent a grievance and/or correspondence is not sufficient to establish their personal participation in a constitutional violation.  See Walker v. Meyer, 2009 WL 961490, *4 (D. Colo. Apr. 7, 2009) ("[M]ere participation in the grievance process is an insufficient basis for asserting a violation of constitutional rights. . . .  The 'mere involvement of processing a grievance at an administrative level does not establish the affirmative link required to establish supervisor liability for an employee's conduct.'") (quoting Boles v. Dansdill, 2007 WL 2770473 , *4 (D. Colo. Sept. 20, 2007)).  "To hold a supervisory prison official liable on the basis of communications he received, 'would be to hold any well informed [prison official] personally liable for damages flowing from any constitutional violation occurring at any jail within that [official's] jurisdiction.  We believe that such a broad theory of liability is inconsistent with the personal responsibility requirement for . . . a section 1983 action.'" Id. (quoting Crowder v. Lash, 687 F.2d 996, 1005-06 (7th Cir. 1982)).

This court finds that the Amended Prisoner Complaint lacks allegations sufficient to establish supervisory liability or personal participation by Zavaras, Milyard, and Dowis under controlling law.  Therefore, it is recommended that Claim Three of the Amended Prisoner Complaint be dismissed as against defendants Zavaras and Milyard and that

the claim against Dowis in Claim Two be dismissed.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the Motion to Dismiss (Docket No. 18) be granted.  It is thus recommended (1) that the Eighth Amendment claims in Claim One against defendants Wade and Tarver be dismissed with prejudice, (2) that the state law negligence claim in Claim One be dismissed without prejudice, (3) that the claims against defendants Chamjock, DeCessaro, and Dowis in Claim Two be dismissed with prejudice, and (4) that the claims against defendants Zavaras and Milyard in Claim Three be dismissed with prejudice.  The only claim remaining would be plaintiff's Eighth Amendment claim in Claim Two against unserved defendant Brian Webster.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley**

27

**v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**


Date:  January 22, 2010                          s/ Michael J. Watanabe
       Denver, Colorado                          Michael J. Watanabe
                                                 United States Magistrate Judge