IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.   09-cv-00295-WYD-MJW

GLENN H.  KEMP,

Plaintiff,

v.

BRIAN WEBSTER,
GATBEL CHAMJOCK,
CHRIS WADE, and
T. TARVER,

Defendants.

---

## RECOMMENDATION ON
## DEFENDANTS WADE AND TARVER'S MOTION TO DISMISS THE SECOND
## AMENDED COMPLAINT (Docket No. 76)

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This case was referred to the undersigned pursuant to an Order of Reference to

Magistrate Judge issued by Chief Judge Wiley Y. Daniel on June 8, 2009 (Docket No.

13).

In an Order filed on March 29, 2010, Chief Judge Daniel granted in part and

denied in part the Defendants' Motion to Dismiss filed on August 3, 2009 (Docket No.

18).  The motion was granted to the extent that the Eighth Amendment claims in Claim

One against defendants Wade and Tarver were dismissed without prejudice, the state-

law negligence claims in Claim One were dismissed without prejudice, the claims

against defendants Anthony A. DeCesaro and Beverly Dowis in Claim Two were

dismissed with prejudice, and the claims against defendant Aristedes Zavaras and

2

Kevin Milyard in Claim Three were dismissed with prejudice.  The motion was denied in all other respects.  (Docket No. 52).

Thereafter, with leave of court (Docket No. 70) the pro se plaintiff filed a Second Amended Complaint (Docket No. 74), which is now the operative pleading.  The following week, counsel entered an appearance on plaintiff's behalf.  (Docket No. 75).

Now before the court for a report and recommendation is Defendants Wade and Tarver's Motion to Dismiss the Second Amended Complaint (Docket No. 76).[1]  Plaintiff, through counsel, filed a Response (Docket No. 82), and the moving defendants filed a Reply (Docket No. 83).  The court has considered these motion papers as well as applicable Federal Rules of Civil Procedure and case law.  In addition, the court has taken judicial notice of the court file.  The court now being fully informed makes the following findings, conclusions, and recommendation that the motion to dismiss be denied.

Defendants Wade and Tarver move to dismiss the Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6) on the following grounds: (1) plaintiff's allegations do not rise to the level of a constitutional violation and the moving defendants are entitled to qualified immunity and (2) plaintiff's official capacity claims are barred by the Eleventh Amendment.

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor.  <u>Morse v. Regents of the Univ. of Colo.</u>,

---

[1]The other two defendants, Webster and Chamjock, have filed an Answer to the Second Amended Complaint and Jury Demand.  (Docket No. 77).

154 F.3d 1124, 1126 (10th Cir. 1998); <u>Seamons v. Snow</u>, 84 F.3d 1226, 1231-32 (10th Cir. 1996).  A motion to dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead 'enough facts to state a claim to relief that is plausible on its face.'"  <u>Cutter v. RailAmerica, Inc.</u>, 2008 WL 163016, *2 (D. Colo. Jan. 15, 2008) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  <u>Bell Atlantic Corp.</u>, 550 U.S. at 545 (citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level."  <u>Id.</u>  "[A] plaintiff must 'nudge [] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . .  Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."  <u>Ridge at Red Hawk, L.L.C. v. Schneider</u>, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting <u>Bell Atlantic Corp.</u>, 127 S. Ct. at 1974).

**<u>Eighth Amendment Claim</u>**

The moving defendants assert that the plaintiff's allegations do not rise to the level of a constitutional violation and that they are entitled to qualified immunity.

Public officials are entitled to qualified immunity from liability for damages under

4

42 U.S.C. §1983 if their conduct does not violate clearly-established statutory or constitutional rights of which a reasonable person would have known. Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 515 (10th Cir.1998). The test for an Eighth Amendment violation has both an objective and a subjective requirement. Farmer v. Brennan, 511 U.S. 825, 834 (1994). The objective requirement is met when an inmate alleges a deprivation that is "sufficiently serious." Id. (quotation omitted). For a claim based on failure to insure safety, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm," id. at 834, otherwise described as an "excessive risk to inmate health or safety," id. at 837, one "sure or very likely to cause serious illness and needless suffering." Helling v. McKinney, 509 U.S. 25, 33 (1993). As to the subjective requirement, "deliberate indifference describes a state of mind more blameworthy than negligence," Farmer, 511 U.S. at 835, but "something less than acts or omissions for the very purpose of causing  harm or with knowledge that harm will result." Id. The test is not met "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. In short, liability requires "consciousness of a risk." Id. at 840.

Here, the moving defendants assert that the

Plaintiff's allegations regarding Wade's driving are conclusory and do not state a claim for a constitutional violation.  While Plaintiff alleges that the roads were snow-packed and icy that day, Plaintiff admits that Tarver arranged for Plaintiff and another inmate to leave an hour and a half earlier than normal due to weather conditions. [Second Amended Complaint (Doc. 74), Claim One, ¶ 1-2].  At worst, Plaintiff's allegations only state a negligence claim and do not rise to the level of a constitutional

violation.  Therefore, Plaintiff's claim should be dismissed.

> In the alternative, Wade and Tarver are entitled to qualified immunity. . . .  Plaintiff's allegations do not show a constitutional violation.  Nor do the allegations show a violation of a clearly established right.

(Docket No. 76 at 4-5).

In response, plaintiff asserts:

> Defendants [sic] refusal to honor Plaintiff's request for a seatbelt combined with allegations that Defendants deliberately drove erratically over snow-packed, icy roads created an excessive risk to Plaintiff's health and safety; and is enough to satisfy the objective requirement of the "deliberate indifference" inquiry.

> Plaintiff's allegations also satisfy the subjective component of the deliberate indifference test.  Defendants not only operated the van recklessly, they do so after denying Plaintiff a seatbelt, the only mechanism available that might have ensured Plaintiff's safety.  Defendants knew that driving erratically on treacherous, snowy, and ice packed roads was likely to cause an accident that could seriously harm prisoners who had requested but were denied seat belts.  Defendants did not simply forget to fasten Plaintiff's seatbelt, they consciously refused to do in spite of the inherently risky driving conditions.  In short, Defendants were conscious of the risk to Plaintiff's health and safety that their conduct posed but consciously disregarded that risk.

(Docket No. 82 at 5-6).

With respect to the claims against these defendants that were raised in the First

Amended Complaint (Docket No. 10 and 15), Chief Judge Daniel made the following

findings:

> . . . With respect to Defendant T. Tarver, Plaintiff has simply alleged that Defendant Tarver failed to "strap the plaintiff in seatbelts during transport", which the Tenth Circuit Court of Appeals has held is not sufficient to allege an Eighth Amendment violation.  *Dexter v. Ford Motor Co.*, 92 Fed. App'x 637 (10th Cir. 2004).

> With respect to Defendant Chris Wade, Plaintiff has plead more, but not enough to state a claim for an Eighth Amendment violation.  With respect to the objective component, Plaintiff alleged that Defendant Wade

failed to strap the Plaintiff in a seatbelt, that Weld was "driving at an unsafe rate of speed on iced-over roads" and that he caused an accident by following another car too closely. . . .  Although Plaintiff was transported 129 miles from Sterling, Colorado to Denver, Colorado, Plaintiff failed to allege any further facts describing Defendant Wade's driving during any part of that trip.  Basically, Plaintiff has alleged that Defendant Wade drove at an unsafe speed that resulted in an accident at the end of the trip - 129 miles later - when he was following another car too closely.  These bare, conclusory allegations are insufficient to allow me to determine that Plaintiff was exposed to an excessive risk that was sure or likely to cause needless suffering. . . .  Therefore, Plaintiff has not made anything more than a conceivable Eighth amendment violation, as opposed to a plausible one. . . .

Even if I assume that Plaintiff has satisfied the objective component, Plaintiff also failed to plead that Defendant Wade acted with deliberate indifference.  Plaintiff has merely alleged that Defendant Wade "failed to adjust his driving to hazardous road conditions", and "sped along as if he were driving in normal weather conditions." . . . Plaintiff argues that he has stated a claim for deliberate indifference and that this case is nearly identical to the facts involved in *Brown v. Missouri Dept. Of* Corr., 353 F.3d 1038 (8th Cir. 2004).  I disagree and find the *Brown* decision inapposite to the situation here.  In *Brown*, the Eighth Circuit determined that a plaintiff sufficiently pled an Eighth Amendment claim for injuries sustained from a motor vehicle accident, which occurred during the plaintiff's transport by the Missouri Department of Corrections to a correctional facility.  There, the plaintiff was shackled with "bellychains, handcuffs, blackbox, and leg chains" and allegedly requested the correctional officers to fasten his seatbelt.  *Id.* at 1040.  The officers refused, and allegedly responded with "aw hell you all will be alright," and "what you all don't trust our driving?"  *Id.*  The plaintiff was "scared by the way the drivers of the vans were driving: speeding ('up to 70 to 75 miles an hour'), following closely, and passing cars 'even if the road markings suggested otherwise.'" *Id.*  The plaintiff's transport vehicle eventually crashed into two other prison vans, and the plaintiff experienced lower back trauma, and whiplash.  *Id.*  The Eighth Circuit "conclude[d] [that plaintiff] stated a claim against the five COs involved in transporting the inmates, as he alleged he asked them all to fasten his seatbelt, but the refused."  *Id.*

In contrast to the factual specificity in *Brown*, the Amended Complaint here contains a dearth of factual elaboration concerning any part of the 129 mile journey from Sterling to Denver.  There are similarly no allegations concerning any communication between Plaintiff and Defendant Wade.  More importantly, the fact emphasized by the Eighth

Circuit - that the prisoner asked guards to fasten his seatbelt, but the refused - is also absent here.  It seems implicit in *Brown* and other decisions that the denial of a request to fasten a seatbelt weighs heavily on the subjective component of an Eighth Amendment challenge.  *Brown*, 353 F.3d at 1040; *Riddick v. reiger*, 2006 WL 2644924 at *7 (M.D.Fla., September 14, 2006)(finding no Eighth Amendment violation where "Plaintiff does not claim that he requested and was denied the use of the seatbelt[.]").  While I do not believe that a failure to plead that a seatbelt was requested and denied is outcome determinative here, coupled with the other factual deficiencies discussed *supra*, I am unable to find that Plaintiff has made a plausible claim that Defendant Wade had actual knowledge of impending harm that he consciously refused to prevent.  *Farmer*, 511 U.S. at 838. *The Ridge at Red Hawk*, 493 F.3d at 1177.  Accordingly, I accept Magistrate Judge Watanabe's finding, which I incorporate herein, that Plaintiff has not made a valid Eighth Amendment claim against Defendants Tarver and Wade.

(Docket No. 52 at 5-7) (footnotes omitted).  Chief Judge Daniel noted in a footnote that the "Plaintiff has submitted additional factual material in the form of an affidavit attached to his Response to Defendants' Motion to Dismiss [d/e 20]."  (Docket No. 52 at 7 n.4.).  Chief Judge Daniel did not consider those materials but noted that "[t]he information contained in the affidavit, however, is the type of factual detail I find lacking from the Amended Complaint."  (Docket No. 52 at 7 n.4).

In the Second Amended Complaint (Docket No. 74) that is now the operative pleading, plaintiff included the additional information he had provided to the court in his affidavit in support of his response to the previous motion to dismiss.  For example, plaintiff's averments now include the following.  Plaintiff stated to the officers that the weather had been bad for awhile and informed them that they could reschedule plaintiff's appointment, whereas plaintiff did not have that option himself because his medical provider had told him that if he refused any medical trips, he would likely be denied future treatment.  Tarver responded that they did not need to cancel, as they

8

called the inmates over early so they could leave early.  After applying the restraints to plaintiff, and upon loading him into the van, plaintiff stated to both Wade and Tarver, "Could we get some seat belts?"  Neither officer responded, which prompted the other inmate in the van to say more loudly, "How bout [sic] some seat belts!"  Again there was no response, but once the van was moving on the highway, Tarver told both inmates, "Putting on seat belts is useless because an inmate can reach down and take 'em off if he doesn't want them anyway."  On more than one occasion during the trip Tarver exclaimed to Wade, "You idiot!"  These remarks were made in response to Wade's reckless driving, which included erratic lane changes and following other vehicles too closely on the ice-patched roads.  Despite recognizing Wade's dangerous driving, Tarver did not attempt to relieve Wade from his driving duties.  Upon arriving in Denver, the road conditions were considerably worse.  As Wade left a traffic light at 14th and Arapahoe, he accelerated downhill, and Tarver yelled, "STOOOOP!!!"  The van slammed into a vehicle in front, causing a five-car pile-up.  Plaintiff and the other inmate passenger were forcefully thrown about in the back of the van and were unable to protect themselves by breaking their falls with their hands or feet, injuring plaintiff's back and neck.

This court finds that at this stage of the proceedings, through these additional averments, plaintiff has nudged his claims across the line from conceivable to plausible in order to survive the motion to dismiss.  At this time, plaintiff's allegation that his seatbelt request was denied, combined with his allegation regarding Tarver's driving under the severe weather conditions, are sufficient to state a cognizable Eighth Amendment claim and one that was clearly established at the time the alleged violation

occurred.

## Official Capacity Claim

In the Second Amended Complaint, plaintiff seeks a declaratory judgment and compensatory and punitive damages.  (Docket No. 74 at 14).

The moving defendants assert that the "Plaintiff's claims should be dismissed to the extent that he is seeking to recover damages or retroactive relief from Defendants in their official capacities."  (Docket No. 76 at 5).  In response, plaintiff states that he "concedes that under the Eleventh Amendment damages may not be available with respect to his claims against Defendant's [sic] in their official capacities.  In an injunctive or declaratory action grounded on federal law the state's Eleventh Amendment immunity can be overcome. . . .  Thus, to the extent Plaintiff is awarded damages on claims for declaratory or injunctive relief, damages against Defendants in their official capacities remain available and those claims should not be dismissed."  (Docket No. 82 at 9) (citation omitted).

"[T]he Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state."  Hunt v. Bennett, 17 F.3d 1263, 1267 (10th Cir. 1994).  "Claims for retrospective declaratory relief are also barred by the Eleventh Amendment."  Wallin v. Brill, 2006 WL 2385188, at *5 (D. Colo. Aug. 17, 2006) (citing Meiners v. University of Kan., 359 F.3d 1222, 1232 (10th Cir. 2004)).  Accordingly, plaintiff's official capacity claims for damages and declaratory relief should be dismissed with prejudice.

**WHEREFORE,** for the foregoing reasons, it is hereby

10

**RECOMMENDED** that Defendants Wade and Tarver's Motion to Dismiss the

Second Amended Complaint (Docket No. 76) be granted in part and denied in part.

More specifically, it is recommended that the motion be granted to the extent that the

plaintiff's official capacity claims for damages and declaratory relief be dismissed with

prejudice.  It is further recommended that the motion be denied in all other respects.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2),**

**the parties have fourteen (14) days after service of this recommendation to serve**

**and file specific written objections to the above recommendation with the District**

**Judge assigned to the case.  A party may respond to another party's objections**

**within fourteen (14) days after being served with a copy.  The District Judge need**

**not consider frivolous, conclusive, or general objections.  A party's failure to file**

**and serve such written, specific objections waives *de novo* review of the**

**recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53**

**(1985), and also waives appellate review of both factual and legal questions.**

**Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley**

**v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**


Date:  February 17, 2011                         s/ Michael J. Watanabe
       Denver, Colorado                          Michael J. Watanabe
                                                 United States Magistrate Judge